AFFIDAVIT OF GEOFFREY M. HOWES
MJ-2265-MBB

FILED
IN CLERKS OFFICE
2019 AUG -6 AM 8: 41
DISTRICT COURT
DISTRICT OF MASS.

I, Geoffrey Howes, Special Agent, Homeland Security Investigations (HSI), being duly sworn, depose and state:

1. I am a Special Agent with HSI, and have been so employed since October 2010. Prior to my employment with HSI, I was employed as a Special Agent with the United States Department of State, Diplomatic Security Service (DSS) for eleven years. I am currently assigned to the HSI Boston High Intensity Drug Trafficking Area (HIDTA) Financial Task Force, which consists of representatives from HSI, Massachusetts State Police, Boston Police Department, MBTA Police, and the Bristol County Sheriff's Office. As a Special Agent with HSI, I am a law enforcement officer of the United States within the definition of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. As an HSI Special Agent, I have written and/or participated in the execution of search warrants resulting in the seizure of large quantities of controlled substances and paraphernalia involved in the manufacturing and distribution of controlled substances, United States currency, records of narcotics and monetary transactions, drug customer lists and other documents relating to the manufacturing, transportation, ordering, purchasing and distribution of controlled substances, as well as the collection, expenditure, accounting, transportation, and laundering of drug proceeds. I have participated in the debriefing of defendants, informants, and witnesses who had personal knowledge regarding large-scale narcotics trafficking and money laundering organizations. I have participated in all aspects of drug investigations including conducting surveillance, executing searches pursuant to court-ordered search warrants, and executing arrests.

3. I submit this affidavit in support of an application for a criminal complaint charging YAMEL CUEVAS GONAZLEZ, a/k/a Emanuel ("EMANUEL")[1] and CARLOS NUNEZ, with conspiracy to distribute, and possess with intent to distribute, more than 400 grams of a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, ("fentanyl"), a Schedule II controlled substance, in violation of 21 U.S.C. §846 and 21 U.S.C 841(b)(1)(A)(vi).

**BACKGROUND**

4. The ongoing investigation was initiated by HSI in or about February of 2019. Information had come to the attention of HSI that a drug trafficking organization located outside the United States was importing and distributing controlled substances and laundering drug proceeds in the United States, specifically within Massachusetts.

5. In December of 2018, an individual identified as Martin Espejo ("Espejo") contacted a Source of Information ("SOI") and indicated that he was looking for move ten to fifteen kilograms of heroin and/or cocaine into the United States on a regular basis. Espejo was seeking to establish a client base within the United States, specifically Massachusetts. SOI indicated that SOI had no interest but knew of an individual who might be interested. SOI, in turn, contacted a confidential witness ("CW")[2]. SOI described Espejo as a Dominican male who had previously been deported

---

[1] During the course of the conspiracy, EMANUEL was only known to CW and to law enforcement as EMANUEL. His true identity was only discovered upon his arrest on August 5, 2019. The defendant is referred to as EMANUEL throughout this affidavit for ease of reference as that was the name by which he was known.

[2] CW has been a documented Confidential Witness for HSI since 2008. CW is cooperating with HSI in return for immigration benefits as well as financial compensation. Your affiant, the case agent in this matter, has worked with CW-1 for approximately three years. CW has provided information in the past in connection with narcotics investigations that has proven reliable and resulted in the seizure of multiple kilograms of narcotics and currency. CW has one prior felony conviction in 2002 in the District of Puerto Rico for possession with intent to distribute cocaine in violation of 21 U.S.C. Section 841(a).

from the United States between 2006 and 2008. SOI described Espejo as a citizen of the Dominican Republic who is working with Mexican-based drug cartels. CW understood that SOI would provide Espejo and/or others with contact information for CW.

6. In February of 2019, CW was contacted by an unknown male – later identified as EMANUEL, who sent CW a text and indicated that he was a friend of SOI. In March of 2019, CW and EMANUEL began discussions regarding the sale and purchase of controlled substances, specifically heroin and cocaine.

7. CW learned that EMANUEL was operating out of the New York City area. CW asked EMANUEL for a sample of heroin in order to test the quality of the product. CW asked that the sample be sent through the mail but EMANUEL declined to do so. EMANUEL said he wanted to sell CW a half-kilo of heroin for CW to distribute. During the course of the negotiations, CW was introduced to EMANUEL's "business partner" who CW understood to be working out of Mexico. The investigation later identified this individual as Espejo.

**FIRST DRUG DELIVERY**

8. In conversations, both telephonic and electronic, with CW, Espejo said he is the source of supply for a drug distribution organization in Mexico and sends the controlled substances up to New York. Espejo and EMANEUL told CW that they can send multiple kilograms of heroin or cocaine. It was agreed that CW would receive a half kilo of heroin from EMANUEL and would pay the transportation costs of $1000 for delivery. CW would then have three of four days to sell the heroin and would then send the money from the sales to Espejo and EMANUEL. The first delivery was set for May 6, 2019.

9. On the morning of May 6, 2019, CW received a text message from EMANUEL asking for an address to meet. CW provided the address of 700 Grand Union Boulevard, Somerville, MA.

Prior to the meeting, CW was provided with a recording device and transmitter. The vehicle driven by CW was equipped with a video recording device.

10. At approximately 1:40 p.m. on May 6, 2019, CW received a call from EMANEUL who advised that he was in the area and looking for CW. Surveilling agents observed a Silver Acura MDX ("Acura") with Connecticut registration AM48225 in the area with three males inside.[3] Once the Acura parked, a male exited the driver's seat and placed a call to CW. A second unknown male, UM-1, exited the rear of the vehicle and entered a nearby store. A third unknown male, UM-2, remained in the vehicle.

11. The driver of the ACURA identified himself to CW as EMANUEL. EMANUEL wanted CW to move CW's vehicle closer to his. Once CW parked the vehicle, EMANUEL got into the CW's vehicle. UM-1 passed a Pringles potato chip container to EMANUEL who, in turn, handed the contained to CW. In the container were potato chips and a plastic bag which contained the controlled substance. EMANUEL took $1000 from CW and counted it. Emanuel, UM-1, and UM-2, then departed the area. Subsequently, there was further communication between the parties regarding payment.[4]

12. HSI agents then met CW for a debriefing and took possession of the Pringles container. Field testing of the substance was positive for the presence of fentanyl. The analysis by

---

[3]Registration records indicate the registered owner is Angelita Cruz, 385 Main Street, Apt. C2, Danbury, Ct.

[4] On May 10, 2019, CW advised EMANUEL and Espejo that the money from the sale of the drugs was ready to be sent to them. Espejo sent CW a message via the application, WhatsApp, with the names of ten Mexican nationals living in Culiacan Sinaloa, Mexico. CW was directed by Espejo to break the $24,000 into ten payments and wire the money MoneyGram or Western Union. Eventually the destination was changed to a company located in Los Angeles, CA and an individual located in the Dominican Republic.

the DEA laboratory determined that the substance was, in fact, fentanyl with a net weight of 500.2 grams.

**SECOND DRUG DELIVERY**

13. On June 10, 2019, a second sale and purchase of controlled substances took place in Massachusetts. On June 9, 2019, EMANUEL called CW and advised that he was ready to drive up to Massachusetts to deliver one kilogram. EMANUEL also advised that he had an additional half kilogram to provide. CW advised that CW had the funds to buy the kilo but did not have, at that time, the funds to purchase the additional half-kilo. EMANEUL and CW agreed to meet the next day.

14. On the morning of June 10, 2019, EMANUEL called CW to confirm the meeting place – 600 Legacy Place, Dedham, MA -- and to advise that it would take him approximately 3 ½ to 4 hours to arrive at the location.

15. Before the meeting, CW was again outfitted with a recording device and a transmitter and CW's car was also outfitted with a video recording device. Law enforcement officials were in place to surveille the meeting. CW parked CW's vehicle close to The Gap store and a movie theatre. While in that location, CW received a phone call from EMANUEL who wanted to know CW's location and CW mentioned that CW's vehicle was parked in front of the GAP. At the same time, law enforcement officers observed red Honda Accord ("Accord") with New York plates JGZ-1677 parked on the second level of the parking garage.[5]

16. EMANUEL was observed exiting the vehicle and walked towards CW's car. EMANUEL opened the rear passenger door of CW's car and picked up the Gap bag containing

---

[5] The Accord is registered to Carlos M. NUNEZ, d.o.b. \*\*/\*\*/1972 with an address of 1560 Selwyn Avenue 2G, Bronx, New York 10457.

the payment of $48,000. EMANUEL examined the contents and then made a call to the driver of the Accord to bring the drugs to CW. EMANUEL told CW that he had a New York license but asked if CW could help him change it. EMANUEL also explained that he has fraudulent Puerto Rican identification papers. Finally, EMANUEL told CW that the driver of the Accord was a cousin of his; that they live in the Bronx and use the Accord, which has a hide (secret compartment) to deliver drugs. EMANUEL placed a plastic Target bag on the floor of CW's vehicle.

17. CW left the meeting site and met with law enforcement. CW provided the plastic bag which contained another black plastic bag. Inside were three individually wrapped packages. The weight of the contents of the packages is approximately 1528 grams. The contents were sent to the DEA laboratory and the net weight was found to be 1493.3 grams of fentanyl.

**THIRD TRANSACTION AND ARREST**

18. EMANUEL later contacted CW and advised that he had another kilo to sell to CW. Initially, EMANUEL told CW that he would come to Massachusetts at the end of the week of July 22, 2019. Subsequently, EMANUEL advised CW that they did not have the full amount of controlled substance and would be re-supplied over the weekend. EMANUEL later contacted CW and advised that he would be ready to deliver on Monday or Tuesday, August 5th or 6th.

19. During the weekend of August 3-4, CW and EMANUEL discussed a possible delivery of 5 kilograms. EMANUEL CW that "they" had a new supplier and wanted CW to try 1 kilo for which the price would be $48,000. If the drugs were satisfactory, EMANUEL claimed he could deliver 5-6 kilos on Tuesday or Wednesday. CW and EMANUEL agreed to meet on Monday, August 5, 2019 at the Walpole Mall, Walpole, MA. Prior to the meeting, the usual protocols regarding the search of CW and the vehicle used by CW were followed with negative results. CW was provided with audio and video recording equipment.

20. Law enforcement surveillance observed the same red Honda Accord as was previously used in the second buy, arrive at the meet location. EMANUEL called the CW and asked how this transaction was going to occur. CW told EMANUEL to park next to CW's vehicle. EMANUEL exits the red Honda with a bag in his hand and went to CW's vehicle where EMANUEL spoke to both CW and an undercover law enforcement agent ("UCA") and got into CW's vehicle. EMANUEL took the kilo out of the bag and handed to the UCA who passed it to CW. All three individuals then exited the vehicle and went to the trunk of CW's vehicle. There was a bag containing the payment of $48,000 in the trunk. EMANUEL picked up the money and returned to the red Honda which started to pull away from the parking spot. The vehicle was stopped by law enforcement and both EMANUEL and the driver, later definitely as Carlos NUNEZ, were placed under arrest. The money was recovered from the red Honda from the back passenger seat.

22. As a result of the arrest, EMANUEL was definitely identified as Yamel Cuevas Gonzalez, d.o.b. 1986, and was further identified as being present illegally in the United States from the Dominican Republic. EMANUEL was found to be in possession of fraudulent Puerto Rican identification documents in another identity.

23. The driver of the red Honda was identified as Carlos NUNEZ who was previously identified as the registered owner of the red Honda during the second delivery. NUNEZ's identification listed his address in Clifton, New Jersey although the registration for the red Honda listed an address in the Bronx, New York.

**CONCLUSION**

Based upon the foregoing, I submit there is probable cause to believe that EMANEUL a/k/a YAMEL CUEVAS GONZALE and CARLOS NUNEZ, from the time period from at least

May of 2019 until the present, conspired to distribute and possessed with intent to distribute more than 400 grams of fentanyl in violation of 21 U.S.C. § 846.

_____
GEOFFREY HOWES
Special Agent
HOMELAND SECURITY
INVESTIGATIONS

Subscribed and sworn to before me this 5th day of August, 2019.

_____
MARIANNE B. BOWLER
United States Magistrate Judge