**AFFIDAVIT OF SPECIAL AGENT GEOFFREY HOWES**

I, Geoffrey Howes, state:

**Introduction and Agent Background**

1.  I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since October 2010.  Prior to my employment with HSI, I was employed as a Special Agent with the United States Department of State, Diplomatic Security Service (DSS) for eleven years.  I am currently assigned to the HSI Boston High Intensity Drug Trafficking Area (HIDTA) Financial Task Force, which consists of representatives from HSI, Massachusetts State Police, Boston Police Department, MBTA Police, and the Bristol County Sheriff's Office.  As a Special Agent with HSI, I am a law enforcement officer of the United States within the definition of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.   I hereby state that I am fully familiar with the facts and circumstances surrounding the investigation and arrest of the defendant Carlos Nunez ("NUNEZ").

2.  I make this affidavit in support of the government's sur-reply to Nunez's reply to the Government's Response in Opposition.  [Dkt. 93].  In preparing my statement, I have relied, in part, upon my own involvement and surveillance of the June 10th controlled buy in which a red Honda Accord ("the Accord"), belonging to Nunez, was driven to the buy location in Massachusetts.  In addition, I reviewed photos which show the position of the vehicle during the second transaction.  I also reviewed video footage from the helicopter employed during the course of the investigation.  In support of this statement, I submit two still photos from that video which show the position of the vehicles as well as other photographs taken during the June 10th, 2019 controlled buy.   The photographs and still photos are attached hereto as Exhibits 1-6.

3.  In addition to my review of the evidence, I have discussed this matter with th  Assistant U.S. Attorney assigned to this case.  In particular, I am aware of the claim raised by the defense that the two vehicles involved in the June 10th transaction were in such a position that the CW must have been in a position to see the driver of the red Honda.  Finally, I have reviewed the Defendant's moving papers and, in particular, the following statement of the defendant:  "The government also asserts in its opposition that, during the second transaction, Nunez "was not seen from the vantage point of law enforcement officers or the CW."1 Govt. Opp. at 3. The government does not say, however, whether the cooperating witness was in a position on June 10, 2019 to see the driver of the Accord, which pulled up next to the white car that the cooperating witness was driving. *See* photo, attached as Exhibit 5. Even if the government were to concede that point, defendant is entitled to interview the confidential witness to determine whether he saw the driver of the car and, if so, what the driver looked like."

4.  In response to the Defendant's contentions, I state to the court that the cooperating witness ("the CW") was not in a position to see the driver of the Accord as I will explain herein. As importantly, at the time, I directly asked the CW if the CW could identify the driver of the Accord.  The CW could not identify the driver nor could the CW provide a description of the driver to me.

5.   The defense intimates that the CW must have seen the driver, claiming that the two vehicles -- the SUV driven by the CW and the Accord driven to the meet with a driver and with Defendant Gonzalez -- were parked next to each other.   However, as the photos attached to this sur-reply show, the Accord, a smaller vehicle than the undercover SUV, was in a parallel position to the SUV with both vehicles facing in the same direction.  In this position, the driver of the Accord was not directly across from the driver of the SUV.  As a close examination of Exhibit 1 shows, the front of the white SUV obscures the parking space line while the Accord is several feet behind the line.  This resulted in the Accord's driver door being parallel to the rear passenger door of the SUV.   In Exhibit 2, another

still from the helicopter video, it is clear that the Accord driver's side mirror is several feet behind the SUV's passenger's side mirror (and the SUV's driver's side mirror), meaning that the Accord's driver was several feet behind the driver of the SUV.  This positioning is also clearly seen in Exhibit 3. Exhibit 3 was taken while the driver of the Accord was in the vehicle, yet as can be seen from this photo, the driver was not visible to the surveillance photographer.  In both Exhibits 3 and 4, the height difference between the vehicles is also clearly apparent.   Exhibits 5 and 6 show the Defendant Gonzalez at the  SUV's rear passenger side door.  In Exhibit 5, Gonzalez is parallel to the Accord driver window.  In Exhibit 6, Gonzalez was placing the drugs in the back seat.  As can be seen, the open door of the passenger side of the SUV is parallel to, and obscuring, the driver's side of the Accord.

6.  In addition to questioning the CW, I also inquired of another agents and officers on the scene as to whether any of them had been able to see the driver of the Accord.  None of the agents or officers, including myself, were able to see the driver of the Accord during this transaction.

I declare that the foregoing is true and correct

*/s/ Geoffrey Howes*
Geoffrey Howes, Special Agent, HSI