UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA,       )
                             )
       Plaintiff,        )
                             )
   v.                  )  Criminal Action No.
                             )  1:19-cr-10361-IT-1
YAMEL CUEVAS GONZALEZ,      )
                             )
       Defendant.        )
                             )

_____


BEFORE THE HONORABLE INDIRA TALWANI, DISTRICT JUDGE


RULE 11 HEARING BY VIDEOCONFERENCE


Tuesday, January 19, 2021
3:22 p.m.


John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts


Robert W. Paschal, RMR, CRR
Official Court Reporter
rwp.reporter@gmail.com

1                            **A P P E A R A N C E S**

2

     On behalf of the Government:

3

          UNITED STATES ATTORNEY'S OFFICE
4         BY:  NADINE PELLEGRINI
          One Courthouse Way
5         Suite 9200
          Boston, MA  02210
6         (617) 748-3261
          nadine.pellegrini@usdoj.gov
7

8

     On behalf of the Defendant:

9

          KRASNOO, KLEHM & FALKNER LLP
10        BY:  JAMES B KRASNOO
          28 Andover Street
11        Suite 240
          Andover, MA  01810
12        (978) 475-9955
          jkrasnoo@kkf-attorneys.com
13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1

2          (In open court at 3:22 p.m.)

3          THE DEPUTY CLERK:  United States District Court is

4     now in session, the Honorable Judge Indira Talwani presiding.

5          This is Case Number 19-cr-10361, United States

6     versus Yamel Cuevas Gonzalez.  Will counsel please identify

7     themselves for the record.

8          MS. PELLEGRINI:  Good afternoon, Your Honor.

9     Nadine Pellegrini for the United States.

10          MR. KRASNOO:  Good afternoon.

11          THE COURT:  Good afternoon.

12          MR. KRASNOO:  Good afternoon, Your Honor.  James

13     Krasnoo for the defendant, who is on Zoom with Mr. Hadad as

14     an interpreter for these proceedings.

15          THE COURT:  Good afternoon.

16          Ms. Marchione, if you could please swear in

17     Mr. Hadad.

18          THE DEPUTY CLERK:  Yes, Your Honor.

19          Please raise your right hand.

20          (Spanish interpreter duly sworn.)

21          THE DEPUTY CLERK:  Please state your name for the

22     record.

23          THE INTERPRETER:  Gabriel Hadad.  Good afternoon.

24          THE COURT:  Good afternoon.

25          So I believe we're here for a change of plea

1    conference; is that correct?

2            MR. KRASNOO:  That is correct, Your Honor.

3            MS. PELLEGRINI:  Yes.

4            THE COURT:  Okay.  The Internet connection is a

5    little wavy, so hopefully we'll be able to proceed all the

6    way through, but I'm having a little distortion, both from

7    Mr. Krasnoo and Ms. Pellegrini.  So hopefully we'll be okay.

8            So let me start by describing the arrangements

9    here, Mr. Cuevas Gonzalez.  You are appearing here today by

10   videoconference.  Your lawyer, the prosecutor, my courtroom

11   deputy, the interpreter, the court reporter, and I are all

12   appearing on -- by video with you.  There are -- well, let me

13   just start -- if you have any trouble with the video or the

14   phone connection or you cannot hear or see what is happening,

15   let me know.  Speak up, raise your hand, and I will stop the

16   proceeding and try to take care of it.  If you need something

17   repeated, let me know.

18           The court reporter -- you can see online -- the

19   court reporter is preparing a transcript of this proceeding,

20   but there will be no recording of the video itself preserved.

21           Now, you have the right to be physically present in

22   open court for this proceeding, but you can waive that right.

23   Before I ask whether you intend to waive your right, you

24   should know the following:

25           Today is January 19, 2021.  We are experiencing a

worldwide epidemic caused by the coronavirus.  The president
of the United States and the governor of Massachusetts have
each declared a state of emergency.  Congress has passed an
emergency statute that permits defendants in criminal cases
to appear in court by video or telephone for certain types of
proceedings under certain circumstances.

Our normal procedure before the emergency was to
have all defendants physically present in the courtroom for
change of plea hearings.  We are attempting, however, to
protect the health and safety of court employees, lawyers,
the defendants, security personnel and everyone else involved
in the court system; and at the same time, to -- we are
attempting to permit the basic functions of court to go
forward without unnecessary delays.

The physical appearance of defendants and their
counsel in the courthouse and transportation to and from the
courthouse are likely to increase the health risks for all
persons involved as well as the general public.  To try to
minimize the health risks, we are giving defendants who
prefer to appear in court by video the option to do so.  It
is voluntary.  You do not have to appear by video, but if you
choose to appear by video, I will ask you to waive your right
to be physically present.

You should also know that you have the right to a
public proceeding and to have this proceeding conducted in

1    open court, in public view.  And, again, our normal procedure

2    before the emergency was to have all such proceedings in open

3    court, in public view.  In light of the emergency caused by

4    the pandemic and as announced on our website, we are

5    permitting members of the public to have access to this

6    videoconference.

7             And, Ms. Marchione, are there members of the public

8    on the conference line?

9             THE DEPUTY CLERK:  Yes, Your Honor, there are.

10            THE COURT:  Okay.  So do you understand that you

11   have the right to be physically present in open court for

12   this change of plea?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Do you understand you have the right to

15   consult with your lawyer during the change of plea?

16            THE DEFENDANT:  Correct.

17            THE COURT:  Do you understand, if you wish to speak

18   with your lawyer during the change of plea, you just need to

19   let me know, and I will make arrangements for the two of you

20   to have a private communication?  Okay?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Do you understand you have the right to

23   hear and see everything that happens in court during the

24   change of plea, but because this is by videoconference, all

25   you will see is what is on the screen?  Do you understand

1    that?

2                THE DEFENDANT:  Yes.

3                THE COURT:  And do you understand that your family

4    members and supporters have the right to attend this

5    proceeding, but to do so, they need to have used the

6    telephone lines?  Do you understand that?

7                THE DEFENDANT:  Correct.

8                THE COURT:  Have you consulted with your lawyer

9    about waiving your right to appear in person?

10               THE DEFENDANT:  We have spoken on video.

11               THE COURT:  Okay.  And do you agree to waive your

12   right to appear in person for this change of plea and instead

13   to appear by video?

14               THE DEFENDANT:  It's better to do it this way.

15               THE COURT:  Okay.  And you waive your right to

16   appear in person, then?

17               THE DEFENDANT:  Correct.

18               THE COURT:  And do you also agree that, to the

19   extent that your right to public access in this proceeding is

20   in any way impaired, you waive that right?

21               THE DEFENDANT:  Correct.

22               THE COURT:  And to the lawyers, is there any reason

23   I should not accept the waiver?

24               MS. PELLEGRINI:  No, Your Honor.

25               MR. KRASNOO:  None from the defendant, Judge.

1    James Krasnoo -- defendant's attorney, James Krasnoo.

2            THE COURT:  I find that defendant has knowingly and

3    voluntarily waived his right to appear physically and has

4    knowingly and voluntarily agreed to proceed by

5    videoconference.  I also find that Mr. Cuevas Gonzalez's

6    change of plea cannot be further delayed without serious harm

7    to the interests of justice since delaying this proceeding

8    until it is reasonably safe for Mr. Cuevas Gonzalez and his

9    attorney to appear in person would frustrate his right to

10   speedy disposition --

11           Yes, Mr. Cuevas Gonzalez?

12           THE DEFENDANT:  I just want to make sure that we

13   proceed on this medium, on this platform.

14           THE COURT:  Yes.  That's -- we are going to proceed

15   on this platform, but I need to make the record clear that it

16   is okay with everyone -- and most particularly, with you --

17   that we proceed this way.  Okay?  So I'm just going through

18   and making sure the record is clear.

19           So I find, again, that the change of plea cannot be

20   further delayed without serious harm to the interest of

21   justice since delaying the proceeding until it is reasonably

22   safe for Mr. Cuevas Gonzalez and his attorney to appear in

23   person would frustrate his right to a speedy disposition of

24   the charges brought against him.

25           I further find that the measures taken to provide

1    public access to this proceeding are reasonable under the

2    circumstances and that, to the extent that the defendant's

3    right to public access is in any way impaired, he has

4    knowingly and voluntarily waived that right.  I accept the

5    waiver, and I will proceed now to the change of plea.

6            So with that, Ms. Marchione, can you please swear

7    in Mr. Cuevas Gonzalez?

8            THE DEPUTY CLERK:  Yes, Your Honor.

9            Mr. Cuevas Gonzalez, please raise your right hand.

10           (Defendant duly sworn.)

11           THE DEPUTY CLERK:  Please state your name for the

12   record.

13           THE DEFENDANT:  Yamel Cuevas Gonzalez.

14           THE DEPUTY CLERK:  Thank you.

15           THE COURT:  Mr. Cuevas Gonzalez, do you understand

16   that you are now under oath and that if you answer any of my

17   questions falsely, your answers may later be used against you

18   in another prosecution for perjury or making a false

19   statement?

20           THE DEFENDANT:  Correct.

21           THE COURT:  I'm sorry; what was his response?

22           THE INTERPRETER:  The answer was "correct.

23   Correct."

24           THE COURT:  Thank you.

25           And, again, Mr. Cuevas Gonzalez, at any point, if

1    you need to speak to Mr. Krasnoo, you are welcome to do so.

2    Just let me know.

3                    So how old are you?

4                    THE DEFENDANT:  34.

5                    THE COURT:  And what education level have you

6    attained?

7                    THE DEFENDANT:  First year in high school.

8                    THE COURT:  And as you appear here today, are you

9    under the influence of any drug or alcoholic beverage of any

10   kind?

11                   THE DEFENDANT:  No, not at all.

12                   THE COURT:  Have you taken any medicine,

13   prescription or otherwise, that could affect your ability to

14   understand these proceedings and to testify truthfully?

15                   THE DEFENDANT:  No.

16                   THE COURT:  Have you received any recent treatment

17   for any mental illnesses or psychological problems of any

18   kind?

19                   THE DEFENDANT:  No.

20                   THE COURT:  Have you received a copy of the

21   indictment in this case?

22                   THE DEFENDANT:  I received everything my attorney

23   has sent me.

24                   THE COURT:  So the indictment is the formal charge

25   from the Government that sets forth the charge against you.

1   Have you seen that?

2             THE DEFENDANT:  Okay.  Yes.

3             THE COURT:  And Count 1 charges you with a

4   violation of 21 U.S.C. Section 846, conspiracy to distribute

5   and to possess with intent to distribute 400 grams or more of

6   fentanyl from in or about February 2019 until on or about

7   August 5, 2019, in the District of Massachusetts, New York,

8   Mexico, and elsewhere.

9             Count 2 charges you with a violation of 21 U.S.C.

10  Sections 841(a)(1) and (b)(1)(A)(vi) and 18 U.S.C. Section 2,

11  distribution of and possession with intent to distribute

12  400 grams or more of fentanyl, aiding and abetting, on or

13  about May 6, 2019, in the District of Massachusetts and

14  elsewhere.

15            Count 3 charges you with a violation of 21 U.S.C.

16  Sections 841(a)(1) and (b)(1)(A)(vi) and 18 U.S.C. Section 2,

17  distribution of and possession with intent to distribute

18  400 grams or more of fentanyl, aiding and abetting, on or

19  about June 10, 2019, in the District of Massachusetts and

20  elsewhere.

21            And Count 4 charges you again with the same crime:

22  intent to distribute 400 grams or more of fentanyl, aiding

23  and abetting, on or about August 5, 2019, in the District of

24  Massachusetts and elsewhere.

25            And the indictment also includes drug forfeiture

1    allegations under 21 U.S.C. 853.

2              Do you understand the charges?

3              THE DEFENDANT:  What was that last count, the

4    seizure of what exactly?

5              THE COURT:  The last -- the last thing I said was

6    drug forfeiture allegations.  That's a provision in the

7    indictment that you forfeit the proceeds of the crime.

8    Before that, Count 4 was the distribution and possession with

9    intent to distribute 400 grams or more of fentanyl, on or

10   about August 5, 2019, in the District of Massachusetts.

11             Did you understand those?

12             THE DEFENDANT:  Okay.  Yes, that's fine.

13             THE COURT:  Okay.  Do you understand that you're

14   represented here by counsel?

15             THE DEFENDANT:  Correct.

16             THE COURT:  And have you fully discussed the

17   charges against you and the facts and circumstances of this

18   case with counsel?

19             THE DEFENDANT:  We have spoken.

20             THE COURT:  And have you fully discussed them, the

21   full circumstances and facts of the case and the charges

22   against you, with your counsel?

23             THE DEFENDANT:  We have spoken, correct.

24             THE COURT:  Are you fully satisfied with your

25   counsel, representation, and the advice given to you in this

1    case by your attorney?

2            THE DEFENDANT:  Correct.

3            THE COURT:  Okay.  And to counsel, have you

4    communicated all formal offers from the prosecution to accept

5    a plea on terms and conditions that may be favorable to the

6    accused?

7            MR. KRASNOO:  Yes, Your Honor.

8            THE COURT:  And I understand there is no plea

9    agreement; is that correct?

10            MR. KRASNOO:  There is no plea agreement,

11    Your Honor.  There is an oral discussion between

12    Ms. Pellegrini and myself wherein she has indicated that she

13    would be recommending, without a written plea agreement, the

14    minimum mandatory sentence that must be imposed in light of

15    the quantity of fentanyl, which is a ten-year minimum

16    mandatory sentence.

17            THE COURT:  Okay.  Mr. Cuevas Gonzalez, do you

18    understand that you have no agreement with the United States

19    Government with regard to this -- your guilty plea here?

20            THE DEFENDANT:  Yes, madam.

21            THE COURT:  And your attorney has just relayed that

22    the attorney for the United States will -- has said that she

23    will make a recommendation here of the minimum mandatory

24    sentence, but do you understand that that is not a binding

25    agreement?  You don't have a binding written agreement with

1    the United States Government?

2              THE DEFENDANT:  Correct.

3              THE COURT:  Okay.  Has anyone attempted in any way

4    to force you to plead guilty in this case?

5              THE DEFENDANT:  No.

6              THE COURT:  And are you pleading today of your own

7    free will?

8              THE DEFENDANT:  Correct.

9              THE COURT:  Do you understand the offenses to which

10   you are pleading guilty are felonies?

11             THE DEFENDANT:  Pardon me?  I didn't understand.

12             THE COURT:  Do you understand these are felonies?

13   These are crimes that are punishable by more than a year in

14   prison, and so, for many different laws, they have serious

15   consequences.  Do you understand that?

16             THE DEFENDANT:  Correct.

17             THE COURT:  And do you understand, if I accept your

18   plea, you will be judged guilty of these offenses?

19             THE DEFENDANT:  Correct.

20             THE COURT:  And do you understand that by being

21   judged guilty, you may lose valuable civil rights, including

22   the right to possess a gun or any kind of firearm or

23   ammunition?  Do you understand that?

24             THE DEFENDANT:  Correct.

25             THE COURT:  And are -- are you a United States

1  citizen?

2          THE DEFENDANT:  No.

3          THE COURT:  So do you understand that by pleading

4  guilty, because you are not a United States citizen, you may

5  be removed from the United States, denied citizenship, and

6  denied admission to the United States in the future?

7          THE DEFENDANT:  Yes, correct.

8          THE COURT:  And have you fully discussed any

9  potential immigration consequences with your attorney?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  I'm going to go through now and

12  talk about the possible penalties.

13          And maybe I'll turn to you, Ms. Pellegrini.  If you

14  could please state the maximum possible penalties provided by

15  law and any applicable mandatory minimum penalties here.

16          MS. PELLEGRINI:  Certainly, Your Honor.

17          All of the counts carry the same penalties.

18  Because of the drug weight, there is a mandatory minimum for

19  each count of ten years.  The maximum penalty by statute is

20  life imprisonment, but as Mr. Krasnoo has indicated, I have

21  indicated to him that I will recommend no more than the

22  mandatory minimum of ten years.

23          In addition to the incarceration, there is a fine

24  that reaches up to $10 million per count.  There is a term of

25  supervised release, if the Court were going to impose such,

1    which carries a minimum mandatory of five years.

2              And then there is also the special assessment of

3    $100 per count; and as the Court has mentioned, there are

4    potential immigration consequences to the plea for these

5    counts.

6              THE COURT:  Is there any forfeiture issue here?

7              MS. PELLEGRINI:  Well, Your Honor, I neglected to

8    discuss this with Mr. Krasnoo:  I do not feel comfortable at

9    this time moving for forfeiture because some of the property

10   this is listed in the forfeiture allegation is alleged to

11   belong to the co-defendant, Carlos Nunez; in particular, the

12   vehicle and some monies that were found in the vehicle.

13             But until -- and unless Mr. Nunez is convicted of

14   those charges, I do not believe it's appropriate at this time

15   to move forward on the forfeiture allegations.

16             THE COURT:  Okay.  So assuming Mr. Cuevas Gonzalez

17   is sentenced before those issues are resolved with Mr. Nunez,

18   do I understand you to be saying that at -- the Government

19   would not be moving for forfeiture in connection with the

20   sentencing?

21             MS. PELLEGRINI:  Correct.

22             THE COURT:  Okay.  Mr. Cuevas Gonzalez, did you

23   understand the minimum sentence that Attorney Pellegrini

24   described here, that if you're -- if -- once you've pled

25   guilty to these charges, the minimum sentence that I can

1    impose is imprisonment of ten years, five years of supervised

2    release, a special assessment of $100 on each of these four

3    counts and -- did you understand that?

4                    THE DEFENDANT:  Yes, madam.

5                    THE COURT:  And I want to make sure you also

6    understand how the sentencing guidelines will work in this

7    case.  Have you and your attorney talked about the sentencing

8    guidelines and how they might apply?

9                    THE DEFENDANT:  Yes.  He has been explaining that

10   to me.

11                   THE COURT:  And so the way the guidelines will work

12   here is that you will be interviewed by the probation office,

13   and they will prepare a presentence report for me.  That

14   report will have information about you, your criminal

15   history, crimes you've committed, any uncharged or dismissed

16   conduct.

17                   And I may consider all of this information in

18   applying the sentencing guidelines.  And you'll have the

19   right to challenge the facts in the guidelines, but I just

20   have to find those facts are more likely true than not in

21   order to consider those.  Do you understand that?

22                   THE DEFENDANT:  Correct.

23                   THE COURT:  And will -- using the guidelines, I

24   will calculate what your guideline is, and I may or may not

25   come to the same calculation that your attorney has come to,

1    because then -- I don't know yet because I don't know what

2    your sentencing -- presentence report will state.

3              But do you understand that you won't have the right

4    to withdraw your plea if the guideline calculation is

5    different than you expect?

6              THE DEFENDANT:  When you say if the sentencing or

7    the guideline is different to what I expected -- to what I

8    expected, different in what sense?

9              THE COURT:  Well, I can sentence you -- once you've

10   pled guilty, I will sentence you to at least the ten-year

11   minimum mandatory.  I have to do that by law.  But I also

12   have to consider what the presentence report says.  And the

13   presentence report might calculate that the sentence should

14   be higher than ten years.  It can't -- it could calculate

15   lower than ten years, but that doesn't matter, because the

16   law requires I have to at least give you a ten-year

17   imprisonment.

18             So the presentence report could suggest that there

19   should be a higher guideline, and you don't get to pull

20   your -- withdraw your plea if that's different than you

21   expect.  Do you understand that?

22             THE DEFENDANT:  Yes, I do.

23             THE COURT:  And then whatever the sentencing

24   guideline is, that's a starting point for me.  And I have the

25   authority under the law to sentence you to more than the

1    guidelines or less than the guidelines, so long as the

2    sentence that I impose is reasonable under the circumstances.

3              And the law requires I cannot sentence you for less

4    than ten years, but I can sentence you all the way up to life

5    depending on the facts that come out at the -- through the

6    presentence report and my understanding of it, so long as

7    what I sentence is reasonable under the circumstances.

8              Do you understand that?

9              THE DEFENDANT:  Correct.

10             THE COURT:  So although the Government has agreed

11   they won't recommend more than a ten-year sentence, it's

12   possible that I would sentence you to more than ten years.

13   Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And do you understand that you will not

16   be permitted to withdraw your plea of guilty if your sentence

17   is longer or different than you expect?  Do you understand

18   that?

19             THE DEFENDANT:  Yes.  Is that something I may run

20   by my attorney?

21             THE COURT:  Absolutely.  If you want to take a

22   minute and talk with him, absolutely.  Ms. Marchione -- so

23   the way this works, you'll get the -- we need to get the

24   guard in the room, the correctional officer in the room to

25   press the -- to indicate on the computer.

```
1              Mr. Hadad, can you -- he can't hear me.  If you can
2    let him know and --
3              THE INTERPRETER:  Yes, Judge.
4              THE COURT:  And, Ms. Marchione, if you can put them
5    in a breakout.  Thank you.
6              THE DEPUTY CLERK:  There should be an invitation on
7    the screen now.  Please let me know if there is not.
8              THE COURT:  There we go.  And Mr. Hadad.
9              (Pause in proceedings.)
10             MR. KRASNOO:  Good afternoon, Your Honor.
11             I have consulted with my client, and he indicates
12   that he understands both what you've explained to him and
13   what I've explained to him and wishes to go forward.
14             THE COURT:  Mr. Krasnoo, let's wait till we get
15   everybody back up and then start what you're saying.
16             MR. KRASNOO:  Thank you.
17             THE COURT:  You can start again.
18             MR. KRASNOO:  Okay.
19             THE INTERPRETER:  Hold on.  Hold on, Mr. Krasnoo.
20   Hold on, Mr. Krasnoo.
21             THE COURT:  Hold on.  Hold on.
22             THE INTERPRETER:  Yes, can you hear me, Judge, and
23   everybody else?
24             THE COURT:  I can.
25             THE INTERPRETER:  Okay.  Thank you.  We're good.
```

1          THE COURT:  Okay.  Go ahead, Mr. Krasnoo.

2          MR. KRASNOO:  Okay.  I'll try it again.

3          Your Honor, I have consulted with my client.  He

4    understands what Your Honor has said; namely, that you have

5    the discretion to impose the sentence higher than the minimum

6    mandatory sentence which must be imposed under the statute.

7          I've explained to him what the maximum sentence is

8    to which he's exposed, as a legal matter, and he understands

9    that he may not withdraw his plea if you impose a sentence

10   higher than the minimum mandatory sentence which is going to

11   be recommended by the Government and recommended by myself

12   out of necessity.  And he is -- understands that and is

13   content to go forward with this change of plea.

14         THE COURT:  Okay.  Mr. Cuevas Gonzalez, did you

15   understand what your attorney just told me?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And do you agree?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Okay.  And then the one other thing,

20   besides the imprisonment, just to make sure you understand,

21   currently, the indictment -- the forfeiture allegation in the

22   indictment seeks a $97,000 forfeiture money judgment and

23   possession of the 2010 red Honda Accord.

24         And what the attorney for the Government explained

25   is that if the case is still going forward against Mr. Nunez,

1    your co-defendant, and he has -- he has not yet entered a

2    guilty plea or been found guilty -- then that issue of the

3    forfeiture will not be resolved; and, therefore, it would not

4    be part of a judgment against you.

5            But at this point, the allegation is still there,

6    and depending on what happens with Mr. Nunez, it could be

7    resolved; in which case, this could be part of the judgment

8    against you.  Do you understand that?

9            THE DEFENDANT:  Correct.

10           THE COURT:  Okay.  So the next thing I need to do

11   is to make sure -- now that you understand the consequences

12   of pleading guilty, I need to make sure you understand the

13   rights to a trial that you would be giving up by pleading

14   guilty.  Okay?  Do you understand you have the right to plead

15   not guilty to these offenses and to go to trial?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Do you understand that you have a right

18   to trial by jury?

19           THE DEFENDANT:  Correct.

20           THE COURT:  Do you understand the jury is composed

21   of 12 jurors who must find beyond a reasonable doubt that you

22   committed the crime with which you're charged before you may

23   be found guilty?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Do you understand at trial you would be

1    presumed to be innocent and the Government would have to

2    prove your guilt beyond a reasonable doubt?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And you would have at trial the right

5    to the assistance of counsel for your defense?  Do you

6    understand?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And you would have the right to see and

9    hear all the witnesses against you and have them

10   cross-examined in your defense.  Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And you would have the right, if you

13   choose to exercise it, to testify and put on evidence in your

14   defense, and you would have the right to require witnesses to

15   come to court in your defense.  You understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And you would have the right to refuse

18   to testify and refuse to put on evidence unless you

19   voluntarily elected to do so; and that if you decided not to

20   testify or not to put on any evidence, those facts could not

21   be used against you.  Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And do you further understand that by

24   entering a plea of guilty here today, if I accept your plea,

25   there will be no trial, and you will have waived or given up

1  your right to a trial as well as the rights that come with a

2  trial that I have just described?  Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.  So now I'm going to also make

5  sure that the Government can set forth the evidence that they

6  would use if this case were to go to trial and make sure that

7  you don't have any dispute with these facts.

8          So if this case went to trial, on Count 1, the

9  Government would have to prove that two or more persons

10  agreed to distribute and possess with intent to distribute a

11  controlled substance; that you were a member, a party to or a

12  member of that agreement; that you joined the agreement or

13  conspiracy knowing of its objectives to distribute and

14  possess with the intent to distribute a controlled substance

15  and intending to join together with the alleged conspirators,

16  with at least one alleged conspirator to achieve the objects;

17  and that the conspiracy involved a total of 400 grams or more

18  of a mixture or substance containing a detectable amount of

19  fentanyl.

20          And with regard to Counts 2, 3, and 4, that you

21  possessed a mixture or substance containing the controlled

22  substance; that you did so knowingly or intentionally; that

23  you intended to distribute the controlled substance; that the

24  controlled substance was fentanyl; and that the weight of the

25  mixture or substance containing the controlled substance was

1    400 grams or more; and that each of those counts, that this

2    happened on these three separate occasions.

3         Do you understand these elements and that the

4    Government would have to prove those elements beyond a

5    reasonable doubt in order for you to be found guilty at trial

6    as to these charges?

7         THE DEFENDANT:  Yes.

8         THE COURT:  And, Ms. Pellegrini, can you please

9    state the factual basis for the plea, what the Government

10   would be prepared to prove if this case were to go to trial?

11        MS. PELLEGRINI:  Certainly, Your Honor.

12        To flesh out what the Court has just said,

13   beginning in February of 2019, the defendant, who used the

14   name Emanuel throughout the course of this investigation,

15   contacted an individual that I refer to as the confidential

16   witness, having received contact information from another

17   individual.  Over the course of several months, the defendant

18   and the confidential witness spoke about the sale by the

19   defendant of controlled substances; specifically, fentanyl.

20        During the course of the conspiracy, there were

21   three separate buys, sales of fentanyl, the first occurring

22   in May of 2019.  There was contact information and

23   destination information exchanged between the defendant and

24   the confidential witness wherein the defendant was going to

25   arrive at an address here in Massachusetts to provide

1  fentanyl to sell.

2          This is a part of the physical evidence, including

3  video and audiotapes and the testimonial evidence of law

4  enforcement agents and also of chemists with respect to what

5  was purchased and sold and what it turned out to be.

6          On that first day, the agents observed three males

7  driving through a parking lot at the destination, and one of

8  the individuals got out of the car -- turned out to be the

9  defendant, who introduced himself to the confidential witness

10 as being Emanuel.  The defendant entered the confidential

11 witness's vehicle and wanted the confidential witness to move

12 his car closer to the silver Acura, which the three

13 individuals had arrived in.

14         When the confidential witness did that, the

15 defendant got back into the Acura.  The agents could see that

16 as the defendant got back into the car, a second male, who is

17 unidentified and remains unidentified, passed the defendant a

18 Pringles potato chip container.

19         The defendant, in turn, gave that container to the

20 confidential witness, who opened it; and under the potato

21 chips, there was a black plastic bag that was found to

22 contain what the DEA lab analysis indicated was fentanyl,

23 with a weight of 500.2 grams, so in excess of the 400 grams,

24 in that instance.

25         The defendant took a thousand dollars for travel

1    expenses from the confidential witness.  He and the other two

2    individuals departed the area.

3           The second controlled buy was in June of 2019.

4    Again, prior to this purchase and sale, the defendant called

5    the confidential witness and said he was ready to drive up

6    and deliver a kilo.  The confidential witness was unavailable

7    on that particular day but said he could meet the next day.

8    There's a conversation about how much money and the amount of

9    the drugs to be exchanged or to be bought.

10          On June 10th, the defendant called again, called

11   the confidential witness to confirm the location.  And at

12   this point, the agents observed another vehicle, a red Honda

13   Accord, arrive in the area.

14          When that vehicle arrived, the defendant again got

15   into the confidential witness's vehicle and got in on the

16   rear passenger side.  The defendant picked up the money that

17   was going to be used to purchase the drugs and flipped

18   through it.  The bag that the defendant gave to the

19   confidential witness was three individually wrapped packages

20   and, after DEA lab analysis, was found to contain fentanyl

21   with a weight of 1,493 grams.

22          And the third and final buy during the course of

23   this investigation and during the course of the conspiracy

24   was set and happened on August 5, 2019.  Again, prior to the

25   meet, the confidential witness and the defendant negotiated

1    for a sale of a kilo of fentanyl.  The defendant texted the

2    confidential witness and said he had departed the New York

3    City area at around seven and was on the way.

4           The defendant and another individual arrived in a

5    red Honda which was seen at the second meet.  The defendant

6    exited from the passenger side and gave the confidential

7    witness -- I'm sorry -- an undercover agent, who was present,

8    a bag with the marking "Nissan," like the vehicle, on it.

9           The undercover agent gave a backpack containing

10   $48,000 to the defendant.  The defendant took possession of

11   that bag and returned to the Honda.  When the two individuals

12   in the Honda started to drive away, they were stopped.  Both

13   were arrested; that includes the defendant.  The $48,000 was

14   recovered in the back seat.  The drug analysis for the kilo

15   indicated that it is fentanyl and it weighed 993 grams.

16          THE COURT:  So the third transaction was -- there

17   was a transfer of $48,000.  What about on the second

18   transaction?

19          MS. PELLEGRINI:  I'm not so good -- I'm not very

20   good with math, Your Honor.  I do not recall what the amount

21   was.  I suspect it was the remaining part that got us to

22   $97,000; that is alleged in the forfeiture indictment.  So it

23   would have been that amount -- because it was a kilo plus

24   another half a kilo on that second buy.

25          THE COURT:  What you said just confused me there on

1    the transaction, on the forfeiture allegations.  So you're

2    saying the forfeiture allegation includes the 48,000 that was

3    recovered?

4         MS. PELLEGRINI:  It does, Your Honor.  And it --

5    but as I'm looking at my notes now from that, I do recall

6    that on the second purchase, that was approximately $25,000,

7    because the defendant indicated he would take the additional

8    half kilo but needed a few days to pay the money.  So it --

9    that is my understanding, that it includes the money that we

10   did recover.

11        THE COURT:  Okay.  Well, I'm not going to spend

12   time on that right now because I don't think we need to

13   figure out the forfeiture or are not likely to have to figure

14   out forfeiture in this case --

15        MS. PELLEGRINI:  I think --

16        THE COURT:  -- but in the event that we get to

17   forfeiture, I will need a little bit more clarity on that

18   before going ahead with a forfeiture order.

19        But at this point, proceeding with the plea

20   colloquy, Mr. Cuevas Gonzalez, did you understand the facts

21   that Ms. Pellegrini stated that the United States would be

22   prepared to show if the case went to trial?

23        THE DEFENDANT:  Yes.

24        THE COURT:  And to summarize it briefly, what the

25   Government contends is that they have communications from

1   you, text or phone, between you and the confidential witness

2   when these sales were arranged; and that on the three

3   occasions, on each of the three occasions, that you were the

4   person who got out of the vehicle that drove up and went into

5   the confidential witness's vehicle for the drug transaction.

6           And I believe -- I'm not sure you said this right

7   now, Ms. Pellegrini, or not -- but I believe the transaction

8   inside the confidential witness's car was videotaped.  Is

9   that correct?

10          MS. PELLEGRINI:  Yes, they were, Your Honor.  There

11  are pictures and video of that -- those transactions.

12          THE COURT:  So if the case had gone to trial, the

13  evidence would include this video footage, et cetera; and

14  that in each of these transactions, there was -- that you

15  provided a substance that included -- that contained fentanyl

16  in it; and that when they weighed -- when that was analyzed,

17  it amounted to more than the -- 400 grams of substance

18  containing fentanyl on each of the three occasions.  Each

19  time, it was more than 400 grams.

20          Do you have any dispute with those facts?

21          THE DEFENDANT:  I need to talk to my lawyer.

22          THE COURT:  Okay.  We need to ask you to get the

23  correctional officer back in.

24          THE DEPUTY CLERK:  You should see an invitation on

25  your screen to a breakout room.

1              (Pause in proceedings.)

2              MR. KRASNOO:  We have returned.  At least I have

3    returned.

4              THE INTERPRETER:  Okay.  We're good to go.

5              THE COURT:  Sorry.  That was on me.  Okay.  We're

6    good to go.

7              MR. KRASNOO:  Okay.

8              THE COURT:  Did you have to -- did you want to

9    report on something, Mr. Krasnoo?

10             MR. KRASNOO:  Just that I have consulted with my

11   client.  I have answered his question to his satisfaction,

12   and he wishes to resume.

13             THE COURT:  Okay.  So I think we were just about to

14   sum up here.

15             Mr. Cuevas Gonzalez, do you have any dispute with

16   the facts that I have recounted?

17             THE DEFENDANT:  No.  No, I'm agreeing with all the

18   facts.

19             THE COURT:  Okay.  And are you, in fact, guilty of

20   the facts that the -- are charged here?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And to counsel, is there any reason the

23   Court should not take the change of plea?

24             MR. KRASNOO:  Not to my knowledge, Your Honor.

25   Mr. Krasnoo on behalf of the defendant.

1        MS. PELLEGRINI:  No, Your Honor.

2        THE COURT:  Okay.  So I will now take the change of

3   plea.

4        Ms. Marchione?

5        THE DEPUTY CLERK:  Yes, Your Honor.

6        Mr. Cuevas Gonzalez, you are charged in an

7   indictment with:  Count 1, conspiracy to distribute and to

8   possess with intent to distribute 400 grams or more of

9   fentanyl, all in violation of Title 21 United States Code

10  Section 846.

11       Count 2, distribution of and possession with intent

12  to distribute 400 grams or more of fentanyl, aiding and

13  abetting, all in violation of Title 21 United States Code

14  Sections 841(a)(1) and (b)(1)(A)(vi) and Title 18,

15  United States Code Section 2.

16       Count 3, distribution of and possession with intent

17  to distribute 400 grams or more of fentanyl, aiding and

18  abetting, all in violation of Title 21 United States Code

19  Sections 841(a)(1) and (b)(1)(A)(vi) and Title 18

20  United States Code Section 2.

21       And Count 4, distribution of and possession with

22  intent to distribute 400 grams or more of fentanyl, aiding

23  and abetting, all in violation of Title 21 United States Code

24  Sections 841(a)(1) and (b)(1)(A)(vi) and Title 18

25  United States Code Section 2.

1      You have previously pleaded not guilty to these

2  charges.  Do you now wish to change your plea?  Yes or no?

3      THE DEFENDANT:  Yes.

4      THE DEPUTY CLERK:  How do you now plead to

5  Counts 1, 2, 3, and 4?  Guilty or not guilty?

6      THE DEFENDANT:  Guilty.

7      THE DEPUTY CLERK:  Thank you.

8      THE COURT:  The Court finds the defendant is fully

9  competent and capable of entering an informed plea, that he

10  is aware of the nature of the charges and the consequences of

11  the plea, and that the plea of guilty is a knowing and

12  voluntary plea supported by an independent basis in fact

13  containing each of the essential elements of the offenses

14  charged.  The plea is, therefore, accepted, and the defendant

15  is now judged guilty of these offenses.

16      So with that, the next step here is the presentence

17  report.  You will be interviewed by the probation office.

18  The -- your attorney may be present for that interview if you

19  wish.  It is important that the report is accurate.  It will

20  not only affect what sentence you receive, but also what

21  happens to you after you're sentenced.  If you're sent to

22  prison, it will affect where you're sent, what happens when

23  you get there.

24      Even minor mistakes in the report should be

25  corrected.  You'll have a chance to have -- read the report

1     or have it read to you and to file objections before the time

2     of sentencing.  You and your attorney will both have the

3     opportunity to speak on your behalf at the time of

4     sentencing.

5             So with that, I am referring you to the probation

6     office for the presentence investigation and preparation of

7     the report.  And we need a date for sentencing.

8             THE DEPUTY CLERK:  Your Honor, I have April 2nd at

9     3:30.

10            THE COURT:  April 2nd at 3:30.

11            Anything else?  Anything else that we need to

12    address today?

13            Yes?

14            MR. KRASNOO:  Your Honor, I should point out,

15    although it's not my holiday, it is Good Friday, April 2nd;

16    and I don't know whether the religious holiday impacts on

17    other people --

18            THE COURT:  I appreciate you're noting that, but --

19    yeah, let's -- sometimes we try to take a little time off

20    around there.  So what do we have after that?

21            THE DEPUTY CLERK:  I'm looking at the calendar,

22    Judge.

23            We have April 8th at 3:30.

24            THE COURT:  Let's do that.  April 8th at 3:30.

25            Anything else right now?

1        MR. KRASNOO:  Not from the defendant, Your Honor.

2        THE COURT:  Ms. Pellegrini?

3        MS. PELLEGRINI:  I've lost my audio, but no,

4   nothing else.

5        THE COURT:  Okay.  So with that, you are remanded

6   to the custody of the marshals, and I will see everyone in

7   April.

8        Thank you very much.

9        MR. KRASNOO:  Thank you.

10        THE DEPUTY CLERK:  Thank you.  Court is in recess.

11        (Court in recess at 4:21 p.m.)

## CERTIFICATE OF OFFICIAL REPORTER

I, Robert W. Paschal, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 24th day of January, 2021.

/s/ Robert W. Paschal

_____

ROBERT W. PASCHAL, RMR, CRR
Official Court Reporter